IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

EDWARD W. CRUM, Administrator of the
Estate of ROBIN M. CRUM, deceased,
EDWARD W. CRUM, CHELSEA L. CRUM,
a minor by her father and next
friend, EDWARD W. CRUM and
ALEXANDER E. CRUM, a minor by
his father and next friend,
EDWARD W. CRUM,

       Plaintiffs,

v.                               Civil Action No. 5:06CV124
                                           (STAMP)

PROGRESSIVE PREFERRED INSURANCE
COMPANY, an insurance company,

       Defendant.

**MEMORANDUM OPINION AND ORDER**
**GRANTING IN PART AND DENYING IN PART**
**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**
**AND DENYING PLAINTIFFS' PARTIAL**
**MOTION FOR SUMMARY JUDGMENT**

## I.  Procedural History

The plaintiffs commenced this civil action in the Circuit Court of Ohio County, West Virginia, asserting two claims against the defendant, including a claim for underinsured motorist coverage benefits and a claim for the violation of the duty of good faith and fair dealing. The defendant removed the case to federal court, and the case was assigned to the undersigned judge for further proceedings. Currently before this Court are the fully-briefed cross motions for summary judgment of both parties. For the reasons set forth below, the defendant's motion for summary

judgment is granted in part and denied in part, and the plaintiffs'
partial motion for summary judgment is denied.

## II.  Facts

On September 17, 2004, the plaintiff, Robin M. Crum,[1] suffered
bodily injuries when she was struck by a vehicle driven by Jamie
Crebs while she was crossing at an intersection in Wheeling, West
Virginia.  At the time of the accident, Mr. Crebs was the holder of
an underinsured motor vehicle policy with Erie Insurance ("Erie")
that included $100,000.00 of applicable bodily injury liability
coverage.

Ms. Crum and her husband, Edward Crum, were the operators of
three separate insurance policies.  First, the Crums held an
uninsured motorist coverage policy through Allstate Insurance
Company ("Allstate") issued in the state of West Virginia.  Next,
Progressive Preferred Insurance Company ("Progressive" or
"defendant") insured Mr. Crum's 1981 Kawasaki motorcycle in the
state of Ohio.  The application for this motorcycle lists an Ohio
state zip code as its garaging location.  The policy was issued in
Ohio, insures risks principally in Ohio, incorporates Ohio rates,
and includes Ohio uninsured and underinsured endorsements.  Lastly,
Progressive insured a Ford pick-up truck and trailer in the state

---

[1]Robin Crum died on May 9, 2008, after an extended illness.
This Court entered an order on July 28, 2008, permitting plaintiff
and husband Edward W. Crum to be substituted as a party for Robin
Crum pursuant to Rule 25 of the Federal Rules of Civil Procedure.

of Ohio under a policy issued to CGO, Inc., a corporation registered in the state of Ohio, with its principal place of business in St. Clairsville, Belmont County, Ohio. Mr. Crum is the registered agent of CGO, Inc. Both the Ford pick-up truck and the trailer registered under the CGO policy maintain Ohio state garaging zip codes. Like the motorcycle insurance policy, the CGO policy was issued in Ohio, insures risks principally located in Ohio, incorporates Ohio rates, and contains Ohio uninsured and underinsured endorsements.

The Allstate and Erie insurance policies are not at issue in this case. The plaintiffs settled their claims with Mr. Crebs for the $100,000.00 Erie policy limits, and later, settled their underinsured motorist claim with Allstate for the $500,000.00 policy limits. Therefore, the only two policies at issue are the motorcycle policy and the CGO policy, both issued by Progressive. The Crums are now seeking underinsured motorist benefits under the two Ohio policies. To date, Progressive has not offered to make any payment to the plaintiffs under the CGO policy. As to the motorcycle policy, however, Progressive has already paid the plaintiffs $200,000.00, claiming that this is the full amount of uninsured/underinsured benefits owed under the policy. Additionally, Progressive has paid $5,000.00 in medical payments to the plaintiffs under the motorcycle policy.

The plaintiffs instituted the present suit, alleging that Progressive owes additional underinsured motorist benefits under the two separate Progressive policies. In addition, the plaintiffs allege that Progressive violated a duty of good faith and dealing owed to the plaintiffs.

### III.  <u>Legal Standard</u>

Under Federal Rule of Civil Procedure 56(c), summary judgment should be granted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  The party seeking summary judgment bears the initial burden of showing the absence of any genuine issues of material fact.  <u>See</u> <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-23 (1986).  "The burden then shifts to the nonmoving party to come forward with facts sufficient to create a triable issue of fact."  <u>Temkin v. Frederick County Comm'rs</u>, 945 F.2d 716, 718 (4th Cir. 1991), <u>cert. denied</u>, 502 U.S. 1095 (1992) (citing <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247-48 (1986)).

"[A] party opposing a properly supported motion for summary judgment may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial."  <u>Anderson</u>, 477 U.S. at 256. The Court must perform a threshold inquiry to determine whether a

trial is needed -- whether, in other words, "there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Id. at 250; see also Charbonnages de France v. Smith, 597 F.2d 406, 414 (4th Cir. 1979) (Summary judgment "should be granted only in those cases where it is perfectly clear that no issue of fact is involved and inquiry into the facts is not desirable to clarify the application of the law.") (citing Stevens v. Howard D. Johnson Co., 181 F.2d 390, 394 (4th Cir. 1950)).

"[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. Summary judgment is not appropriate until after the non-moving party has had sufficient opportunity for discovery. See Oksanen v. Page Mem'l Hosp., 912 F.2d 73, 78 (4th Cir. 1990), cert. denied, 502 U.S. 1074 (1992). In reviewing the supported underlying facts, all inferences must be viewed in the light most favorable to the party opposing the motion. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

IV.  Discussion

A.  Defendant's Motion for Summary Judgment

The defendant contends that it is entitled to summary judgment.  In its motion for summary judgment, the defendant first argues that Ohio law applies to this conflict because the policy was issued in Ohio and because the insured vehicles were garaged in Ohio.  The defendant next argues that Ms. Crum is not covered as an insured under the CGO, Inc. policy because she was a pedestrian at the time of the accident and was not occupying the covered vehicle. The defendant further argues that although Ms. Crum is considered insured under the motorcycle policy, the plaintiffs are only entitled to $200,000.00 rather than the full $500,000.00 policy limits.  Finally, the defendant argues that the plaintiffs' bad faith claim must fail because the plaintiffs received the amount of coverage they are entitled to under the motorcycle policy.

1.  Choice of Law

In its motion for summary judgment, the defendant contends that Ohio law governs the interpretation of both the CGO, Inc. and motorcycle policy because the insured risks, namely the motorcycle and the 1987 Ford Pickup and 1985 Keife Trailer, were garaged in Ohio, and the defendant issued Ohio policies on these vehicles. This Court agrees.

It is well-settled law that a federal court sitting in a diversity action must apply the choice of law rules of the forum

state where it sits. <u>Klaxon Co. v. Stentor Elec. Mfg. Co.</u>, 313 U.S. 487, 496 (1941). Therefore, this Court must apply West Virginia choice of law rules to this action.

The West Virginia Supreme Court has held that "where in a suit for the recovery of uninsured motorist insurance benefits an issue arises which involves insurance coverage, that issue is to be resolved under the conflict of law principles applicable to contracts." Syl. Pt. 1, <u>Lee v. Saliga</u>, 373 S.E.2d 345, 346 (W. Va. 1998). Traditionally, under conflict of law rules governing contracts, West Virginia recognizes that "[t]he law of the state in which a contract is made and to be performed governs the construction of a contract when it is involved in litigation in the courts of this State." Syl. Pt. 1, <u>Michigan Nat'l Bank v. Mattingly</u>, 212 S.E.2d 754, 755 (W. Va. 1975). However, in <u>Lee v. Saliga</u>, 373 S.E.2d at 345, the court specifically addressed the choice of law rules to be applied when the contract is a motor vehicle insurance policy. In West Virginia, the choice of law rule in regard to motor vehicle insurance policies is that "[t]he provisions of a motor vehicle policy will ordinarily be construed according to the laws of the state where the policy was issued and the risk insured was principally located, unless another state has a more significant relationship to the transaction and the parties." Syl. Pt. 2, <u>Lee v. Saliga</u>, 373 S.E.2d at 346.

In a strikingly similar case to the one currently before this Court, the court in Adkins v. Sperry, 437 S.E.2d 284 (W. Va. 1993), had to determine whether Ohio law or West Virginia law was to be applied to a contract for motor vehicle insurance. In that case, the appellees were injured in an automobile accident in West Virginia. Id. at 285. Although the motor vehicle insurance policy was purchased in West Virginia, the application was for an Ohio policy. Id. Furthermore, all three vehicles registered under the policy were licensed in the state of Ohio, and the risk insured was based upon Ohio premium rates. Id. Holding that Ohio law applied to the insurance contract, the court found that West Virginia did not have a more significant relationship to the parties than that of Ohio because the appellees were residents of Ohio, the insurance application was designated as an Ohio application, the policy was an actual Ohio insurance policy, and the risk insured was both registered and licensed in Ohio. Id. at 289.

The facts of this case lead this Court to conclude that Ohio law is the correct law to apply in interpreting the two motor vehicle insurance policies at issue. Pursuant to West Virginia's conflict of law jurisprudence, unless another state has a more significant relationship with the transaction and parties, this Court must construe the provisions of the motor vehicle insurance policies according to the laws where the policy was issued and where the risk insured is principally located. See Syl. Pt. 2, Lee

v. Saliga, 373 S.E.2d at 346.  West Virginia does not have a more significant relationship than the state of Ohio with the motor vehicle insurance policies or the parties.  Instead, the facts demonstrate that the state of Ohio has a significant relationship with both the policies and the parties.  Both policies were issued in Ohio, insure risks principally located in Ohio, reflect Ohio rates, and contain Ohio uninsured and underinsured endorsements.

The plaintiffs argue that this Court should not apply Ohio law because the application of such law would adversely affect the rights of West Virginia citizens as certain anti-stacking and set-off provisions of the motorcycle policy are void under West Virginia law.  Furthermore, the plaintiffs contend that because they are residents of West Virginia, that West Virginia has a more significant relationship to the parties and the motor vehicle policies than the state of Ohio.  These arguments are without merit.

The choice of law rule in West Virginia states that "[t]he provisions of a motor vehicle policy will ordinarily be construed according to the laws of the state where the policy was issued and the risk insured was principally located, unless another state has a more significant relationship to the transaction and the parties." Syl. Pt. 2, Lee v. Saliga, 373 S.E.2d at 346.  The sole factor that the plaintiffs are residents of West Virginia does not automatically imply that the state of West Virginia has a more

significant relationship than Ohio to the transaction and the parties. Mr. Crum works in Ohio. He is the registered agent of an Ohio corporation. The vehicles listed on the two policies are all garaged in the state of Ohio. Both policies were issued in Ohio and provided under Ohio rates. Taken together, these facts demonstrate that Ohio law is the appropriate law to apply in this case.

Additionally, although the West Virginia Supreme Court has held that it is the "preeminent public policy of [West Virginia's] underinsured motorist statute . . . to provide full compensation, not exceeding coverage limits, to an injured person for his or her damages not compensated by a negligent tortfeasor," Syl. Pt. 5, <u>Pristavec v. Westfield Ins. Co.</u>, 400 S.E.2d 575, 576 (W. Va. 1990) (in part), the Court has also recognized that "[t]he mere fact that the substantive law of another jurisdiction differs from or is less favorable than the law of the forum state does not, by itself, demonstrate that application of the foreign law . . . is contrary to the public policy of the forum state." Syl. Pt. 3, <u>Nadler v. Liberty Mut. Fire Ins. Co.</u>, 424 S.E.2d 256, 258 (W. Va. 1992). Instead, the Court held that the significant relationship test ordinarily addresses the public policy considerations:

> Where a choice of law question arises with regard to the interpretation of coverage provisions in a motor vehicle insurance policy executed in another state, the public policy considerations inherent in the fact that the substantive law of the other state differs from our own will ordinarily be adequately addressed by application of

10

the significant relationship conflict of laws test
enunciated in Syllabus Point 2 of <u>Lee v. Saliga</u>.

Syl. Pt. 4, <u>Nadler v. Liberty Mut. Fire Ins. Co.</u>, 424 S.E.2d at 258

(internal citations omitted).  Because the state of West Virginia

does not have a more significant relationship to the transaction

and the parties for the reasons discussed above, the provisions of

the two insurance policies are construed according to the laws

where the policy was issued and the risks insured were principally

located.  The policy was issued by and the risks insured are

principally located in the state of Ohio.  Accordingly, this Court

will apply Ohio law in construing the provisions of the insurance

policies.

    2.   <u>CGO, Inc. Policy</u>

The defendant argues that Ms. Crum cannot receive coverage

under the CGO policy because Ms. Crum does not meet the definition

of "insured" under this policy.  CGO, Inc's policy with Progressive

includes uninsured/underinsured motorist bodily injury coverage,

which states the following:

> Subject to the Limits of Liability, if <u>you</u> pay the
> premium for Uninsured/Underinsured Motorist Bodily Injury
> Coverage, <u>we</u> will pay for damages, other than punitive or
> exemplary damages, which an <u>insured</u> is legally entitled
> to recover from the <u>owner</u> or the operator of an <u>uninsured</u>
> <u>auto</u> or <u>underinsured auto</u> because of <u>bodily injury</u>:
>
> 1.   sustained by the <u>insured</u>;
>
> 2.   caused by an <u>accident</u>; and
>
> 3.   arising out of the ownership, maintenance, or
> use of an <u>uninsured auto</u> or <u>underinsured auto</u>.

(Def.'s Br. Summ. J., Ex. D) (emphasis included). When the named insured on the Declarations Page of the policy is a corporation, the term "insured" means "(i) any person <u>occupying your insured auto</u> or <u>temporary substitute auto</u>; and (ii) any person who is entitled to recover damages covered by this endorsement because of <u>bodily injury</u> sustained by a person described in (i)above." (Def.'s Br. Summ. J., Ex. D) (emphasis included).

The plain and unambiguous language of the CGO policy mandates that this Court holds that Ms. Crum is not an "insured" under the CGO policy. The name insured on the Declarations Page of the CGO policy is "CGO, Inc." Therefore, for Ms. Crum to be an "insured" under this policy, she must be injured by either an uninsured/underinsured motorist while she was occupying the insured autos, here, the 1987 Ford Pickup or the 1985 Keife Trailers, or a temporary substitute of those autos. The undisputed facts show that Ms. Crum was not occupying an insured auto or temporary substitute under the CGO policy when she was struck by Mr. Crebs. Rather, these undisputed facts show that Ms. Crum was a pedestrian, crossing a street in Wheeling, West Virginia, at the time of her accident.

Ohio law presumes that "the intent of the parties is reflected in the language used in the policy." <u>Westfield Ins. Co. v. Galatis</u>, 797 N.E.2d 1256, 1261 (Ohio 2003). A court will "look to the plain and ordinary meaning of the language used in the policy

unless another meaning is clearly apparent from the contents of the policy." Id. "When the language of a written contract is clear, a court may look no further than the writing itself to find the intent of the parties." Looking at the plain language of the policy, it is clear to this Court that Ms. Crum is not an "insured" under the CGO policy, and the plaintiffs do not contest this fact in their responsive pleading. Accordingly, the plaintiffs cannot receive coverage under this policy, and summary judgment is granted on this claim.

### 3. Motorcycle Policy

The defendant acknowledges that Ms. Crum is an "insured" as defined under the motorcycle policy issued to Mr. Crum and is entitled to uninsured/underinsured motor vehicle coverage. Instead, the parties dispute the amount of coverage available to Ms. Crum under this policy. In its motion for summary judgment, the defendant argues that it has met all of its contractual obligations under the motorcycle policy because it has offered the plaintiffs the full $200,000.00 that it is required to pay under the uninsured/underinsured coverage. The plaintiffs contend that under a proper interpretation of the policy and Ohio law, the defendant still owes plaintiffs $36,842.10, or at the very least, $22,222.22.

Ohio law provides that "policy limits of the underinsured motorist coverage shall be reduced by those amounts available for

payment under all applicable bodily injury liability bonds and insurance policies covering persons liable to the insured." Ohio Rev. Code § 3937.18(C). Thus, an insurer providing underinsured motorist coverage is required to setoff, from its policy limits, any sum of payment that the plaintiff received from the tortfeasor. Carroll v. Allstate Ins. Co., 773 N.E.2d 1061, 1068 (Ohio Ct. App. 2002). In this case, the plaintiffs have received the $100,000.00 policy limits from tortfeasor Mr. Crebs' insurance policy with Erie Insurance. Pursuant to Ohio law, therefore, the defendant must setoff that $100,000.00 payment from the policy limits of the motorcycle policy. The motorcycle policy has a $500,000.00 combined single limit for uninsured/underinsured motorist coverage. With the setoff, the available uninsured/underinsured motorist limits are reduced to $400,000.00.

Next, Ohio law requires a pro rata apportionment of insurance proceeds. In Buckeye Union Ins. Co. v. State Auto. Mut. Ins. Co., Syl. Pt., 361 N.E.2d 1052, 1052 (Ohio 1977), the court held that "[w]here two insurance policies cover the same risk and both provide that their liability with regard to that risk shall be excess insurance over other valid, collectible insurance, the two insurers become liable in proportion to the amount of insurance provided by their respective policies." (emphasis added). See also Westfield Ins. Co. v. Nationwide Mut. Ins. Co., 650 N.E.2d 112 (Ohio Ct. App. 1993) (applying the holding in Buckeye Union in the

uninsured and underinsured motorist context).  Ohio law also recognizes that anti-stacking provisions are valid in uninsured/underinsured motor vehicle policies.  Ohio Rev. Code § 3937.18(f).

The two policies implicated in this case are the Progressive motorcycle policy and the Allstate policy.  Both of these policies provide $500,000.00 limits.  Furthermore, both policies contain proportional liability clauses when multiple policies are involved. The Progressive motorcycle policy states that "[c]overage under this [policy] may not be stacked with other uninsured motorist or underinsured motorist coverage . . . .  If there is other applicable uninsured or underinsured motorist coverage, we will pay only our share of the damages."  (Def.'s Br. Summ. J., Ex. E) (emphasis included).  Similarly, the Allstate policy provides that "[i]f more than one policy applies to the accident on a primary basis, we will bear our proportionate share with other uninsured motorists benefits."  (Def.'s Br. Summ. J., Ex. K) (emphasis included).

The parties have offered different mathematical formulas to determine the amount owed under the defendant's provided motorcycle policy.  The defendant argues that pursuant to Buckeye Union, Progressive and Allstate are each liable for the proportion of their respective policy limits compared to the total of all available coverage.  Because both policies have a $500,000.00

15

limit, each company is liable for fifty percent of the total available coverage. With the $100,000.00 setoff, the total available uninsured/underinsured coverage is $400,000.00. Prorating that amount, Progressive owes the plaintiffs only $200,000.00.

The plaintiffs, however, offer two different calculations. The plaintiffs argue that Progressive's pro rata share of liability should be calculated as a percentage of the total policy amounts <u>available</u>. Applying the $100,000.00 setoff to the Progressive motorcycle policy, the plaintiffs contend that Progressive's pro rata share of liability should be calculated as a percentage of the total policy amounts available, here, $400,000.00/$900,000.00. Because four-ninths of $500,000.00, the total policy limit, is $22,222.20, the plaintiffs argue that the defendant underpaid them by that amount.

Alternatively, the plaintiffs argue that Progressive should not be allowed to take the full amount of the setoff as against its policy limits. Rather, the plaintiffs suggest that the setoff should be split with Allstate on a pro rata basis. Thus, the $500,000.00 policy limit on the motorcycle policy would be reduced to $450,000.00. Progressive's pro rata share of liability calculated as a percentage of the total policy amounts available would then amount to $450,000.00/$950,000.00. Multiplied by $500,000.00, the total policy limit, the plaintiffs argue that the

defendant has underpaid them by $36,842.10. Whether this Court applies either of the plaintiffs' calculations, the plaintiffs argue that the defendants are not entitled to judgment, as a matter of law, that the $200,000.00 it has already paid the plaintiffs is the entire uninsured/underinsured benefits that the plaintiffs are entitled to under the motorcycle policy.

This Court recognizes the complicated mathematical calculations involved in this case, but Ohio law provides that the defendant is correct in calculating that the plaintiffs are only entitled to $200,000.00 under the uninsured/underinsured provisions of the motorcycle policy. The rule in <u>Buckeye Union Ins. Co. v. State Auto. Mut. Ins. Co.</u>, 361 N.E.2d at 1052, states that "the two insurers become liable in proportion to the amount of insurance provided by their respective <u>policies</u>." (emphasis added). This seems to be an unambiguous statement that a court must look to the limits of the policy. The policy limit in both the Progressive and the Allstate policy is $500,000.00, an equal share. After deducting the $100,000.00 setoff, Progressive and Allstate are each liable for $200,000.00, the amount that Progressive has already offered the plaintiffs.

Under the facts of this case, Progressive should receive the full benefit of the setoff provision because Allstate has already settled with the plaintiffs for the policy limits. This would be a more difficult case if the Allstate policy had not been paid and

Allstate claimed some portion of the setoff. This is not that case, however. Accordingly, because the defendant has already paid the $200,000.00 of available uninsured/underinsured motorist coverage under the motorcycle policy to the plaintiffs, summary judgment on this claim is appropriate.

4. Bad Faith Claim

Finally, the defendant contends that the plaintiffs' bad faith claims are moot because the defendant has offered the full $200,000.00 available uninsured/underinsured coverage under the motorcycle policy, and Ms. Crum is denied coverage under the CGO policy. The plaintiffs argue that even if the defendant correctly offered the uninsured/underinsured limits of the policies, that a bad faith claim is still warranted because the defendant failed to timely pay the $5,000.00 in medical payments.[2]

This Court holds that the plaintiffs cannot assert any bad faith claims concerning payment of the uninsured/underinsured coverage under either the motorcycle or the CGO policy. Ohio law recognizes that "an insurer has the duty to act in good faith in the handling and payment of the claims of its insured. A breach of this duty will give rise to a cause of action in tort against the

---

[2]The plaintiffs have not raised in their own partial summary judgment, or claimed in any responsive pleadings, that summary judgment as to their bad faith claim against the defendant for medical payments is warranted in this case. Instead, the plaintiffs have argued that this issue should be tried as there remains genuine issues of material fact.

insurer." <u>Hoskins v. Aetna Life Ins. Co.</u>, 452 N.E.2d 1315, 1316 (Ohio 1983). "A bad faith claim, if proven, allows recovery, of what is known as extra-contractual damages. These are actual damages over and above those covered by the insurance contract sustained by the insured . . . ." <u>Asmaro v. Jefferson Ins. Co of New York</u>, 574 N.E.2d 1118, 1123 (Ohio Ct. App. 1989). Because the defendant properly offered the correct amount of uninsured/ underinsured motorist coverage provided by the motorcycle policy to the plaintiffs, the defendant has not acted in bad faith in regard to that policy. Similarly, the plaintiffs cannot assert that the defendant acted in bad faith in the handling and payment of any claims under the CGO policy because the defendant correctly determined that Ms. Crum is not an "insured" under this policy, and therefore, not entitled to any coverage or payment. Accordingly, the bad faith claims that the plaintiffs assert against the defendant under both the CGO and motorcycle policies are considered moot.

Nevertheless, summary judgment is inappropriate on the plaintiffs' bad faith claim concerning the medical payments. The defendant failed to provide the plaintiffs with medical payments until more than a year after this litigation commenced, and almost three years after plaintiffs' counsel put the defendant on notice that Ms. Crum may have medical payments coverage. The defendant claims that it "simply overlooked same and when it realized that

additional coverages may be due it voluntarily extended the payment." (Def.'s Resp. 7.) However, the defendant has offered no evidence supporting this assertion.  Indeed, the plaintiffs make clear that this remains the central issue that must be tried as to the their bad faith claim.

Where a reasonably jury could draw different conclusions as to liability from the facts in evidence, summary judgment must be denied.  <u>Pierce v. Ford Motor Co.</u>, 190 F.2d 910, 915 (4th Cir. 1951).  In this case, the plaintiffs' bad faith claim concerning the medical payment presents genuine factual issues that can properly be resolved only by a finder of fact.  Whether the defendant acted in good faith in handling the medical payments are genuine issues of material fact that may reasonably be resolved in favor of either party on the evidence in this case.  Accordingly, summary judgment must be denied as to the bad faith claim regarding the medical payments.

B.  <u>Plaintiffs' Motion for Partial Summary Judgment</u>

The plaintiffs argue that they are entitled to partial summary judgment in this matter.  In their motion, the plaintiffs contend that the anti-stacking and set-off provisions of the motorcycle policy are void under West Virginia law.  Rather, the plaintiffs assert that West Virginia law is applicable here because it is contrary to West Virginia public policy to apply Ohio law to deny a West Virginia citizen full compensation of damages.  In the

alternative, the plaintiff asserts that the defendants owe them additional money under the uninsured motorist benefits coverage.

Because these issues are all addressed by this Court in deciding the defendant's motion for summary judgment, the plaintiffs' motion for summary judgment is accordingly denied.

## V.  Conclusion

For the above-stated reasons, the defendant's motion for summary judgment is GRANTED IN PART AND DENIED IN PART, and the plaintiffs' motion for partial summary judgment is DENIED.

IT IS SO ORDERED.

The Clerk is DIRECTED to transmit a copy of this memorandum opinion and order to counsel of record herein.

DATED:    September 22, 2008


                                        /s/ Frederick P. Stamp, Jr.
                                        FREDERICK P. STAMP, JR.
                                        UNITED STATES DISTRICT JUDGE